1
2
3
4
5
6
7
8                      **UNITED STATES DISTRICT COURT**
9                     **SOUTHERN DISTRICT OF CALIFORNIA**
10
11   MARK SWEARINGEN dba SEMCO              CASE NO. 09cv473 BTM(BLM)
     MANUFACTURING, individually and as a
12   representative of others similarly        **ORDER GRANTING MOTION TO**
     situated,                                 **DISMISS SECOND AMENDED**
13                                             **COMPLAINT**
                                   Plaintiff,
14        v.
15   HAAS AUTOMATION, INC., CNG
     ASSOCIATES, INC., MACHINING TIME
16   SAVERS, INC., HAI CAPITAL, INC., and
     DOES 1 through 20, inclusive,
17
                                 Defendants.
18
19        Defendants have filed a motion to dismiss Plaintiff's Second Amended Complaint
20   ("SAC") for failure to state a claim.  For the reasons discussed below, Defendants' motion
21   is **GRANTED**.
22
23                           I.  **BACKGROUND**
24        The following facts are taken from the SAC.  The Court makes no finding as to the
25   truthfulness of the allegations.
26        Haas Automation, Inc. ("Haas") manufactures machine tools which consist of four
27   major product lines: vertical machining centers (VMCs), horizontal machining centers
28   (HMCs), CNC lathes and rotary tables.  (SAC ¶ 12.)  These machines sell for over $30,000

1 up to hundreds of thousands of dollars. (Id.)

2       Haas advises potential customers to purchase Haas machines from Haas Factory

3 Outlets around the United States, including the Haas Factory Outlet located in Anaheim,

4 California, which is a division of defendant Machining Time Savers, Inc. ("MTS"). (SAC ¶

5 13). Haas recommends that potential customers finance their purchase through various

6 entities, including defendants HAI Capital ("HAI") and CNC Associates, Inc ("CNC"). (SAC

7 ¶ 14.) Plaintiff alleges that HAI and CNC are "captive leasing companies of Haas" that

8 facilitate purchasing and leasing arrangements between Haas and potential Haas customers.

9 (Id.)

10       All Haas machines are manufactured to trigger a "lock out" alarm (displayed as an

11 error code of "144") after 800 hours of logged use. (SAC ¶ 16.) If a Haas distributor does

12 not provide the machine operator with an access code within the defined time period, the

13 machine shuts down and will not operate. (Id.) Only if a customer is completely up to date

14 on all payments and in compliance with all terms in the agreement(s) will Haas allow its

15 distributors to provide the customer with an access code that will permit another 800 hours

16 of use. (Id.) If a customer is not up to date on payments or not in compliance with applicable

17 terms, the Haas distributor will not provide an access code. (Id.) The only way a customer

18 can, at the outset, obtain a permanent access code which will permanently "unlock" the

19 machine is if the customer has purchased the machine outright and paid for it in full. (Id.)

20       Plaintiff purchased his first Haas machine from MTS in 1998. The manual for this

21 machine provided:

22     This machine is equipped with an electronically-recorded serial number that
    cannot be altered. This is done in case of theft and to track machines when
23     sold to other owners. After approximately 800 hours of use, the machine will
    automatically shut down if it has not been unlocked by Haas Automation. To
24     unlock the machine, we must have the above registration with the serial
    number and the authorization from your dealer. You will receive a number that
25     you will write in over the serial number on setting page (# 26). The
    authorization from the dealer will come upon final acceptance of the machine.
26     If, for any reason, the serial number of the machine is erased in memory, the
    machine will revert back to 200 hour limit for your protection.
27

28 (SAC ¶ 8.) Plaintiff believed that the 800 hour lock-out mechanism was for his own

protection and benefit. (Id.) When Plaintiff got the error message on this first machine,

Plaintiff called MTS and received the code that unlocked the machine for another 800 hours. (Id.)  Plaintiff called MTS eight or nine more times to obtain access codes.  (Id.)  At no time was he advised that Defendants were using the code as a means of ensuring collections. (Id.)  Plaintiff believes that before MTS provided him with the code, MTS checked with HAI and CNC to obtain their consent to give Plaintiff the code.  (Id.)

In 2000, Plaintiff bought a second Haas machine.  (SAC ¶ 9.)  Again, Plaintiff continued to get the 800 hour error code but was always provided with the access code and was never told that the code was being used for collection purposes.  (Id.)

In 2007, Plaintiff bought a third Haas machine from MTS.  (FAC ¶ 10.)  He financed the machine through CNC.  (Id.)  In April 2009, Plaintiff fell behind in his payments.  (Id.)  He was advised for the first time that if he did not bring his account current, he would "be denied further requests for a time code for the Haas equipment."  (Id.)  This was the first time Plaintiff had been told that the "protection" code was not to protect him, but, rather, to protect Haas and its finance arms.  (Id.)  Plaintiff was able to bring his account current, however, "during this time, his machine was shut down twice over the weekend, causing production to stop until Monday and causing delay in satisfying contracts."  (Id.)

Plaintiff brings this action of behalf of himself and a purported class of similarly situated individuals consisting of: "All business operators/entities who purchased a Haas product equipped with a collections lock out code without prior disclosure of and consent to the existence of that lock out code within the past four years."  (SAC ¶ 19.)

Plaintiff's SAC asserts the following claims against Defendants: (1) violation of the Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502; and (2) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200.

///

///

///

///

3

09cv473 BTM(BLM)

## II.  STANDARD

Under Fed. R. Civ. P. 8(a)(2), the plaintiff is required to set forth a "short and plain statement" of the claim showing that plaintiff is entitled to relief.  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory.  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).  When reviewing a motion to dismiss, the allegations of material fact in plaintiff's complaint are taken as true and construed in the light most favorable to the plaintiff.  See Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).  "A plaintiff's obligation to prove the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id.

## III.  DISCUSSION

In an order filed on August 10, 2009, the Court granted Defendants' motion to dismiss Plaintiff's First Amended Complaint, which also asserted causes of action for violation of Cal. Penal Code § 502 and Cal. Bus. & Prof. Code § 17200.  In the Order, the Court explained that Plaintiff's claims were deficient because, inter alia, Plaintiff had failed to allege that Defendants had ever refused to provide him with an access code, resulting in additional efforts on the part of Plaintiff to obtain the code or in the machine shutting down.  As discussed below, despite a few additional allegations, Plaintiff's SAC does not remedy this defect.

A.  Cal. Penal Code § 502

Plaintiff claims that Defendants' use of the 144 lock-out code without disclosure or consent constitutes a violation of Cal. Penal Code § 502, specifically subsections (c)(1) and (c)(5), which provide that any person who commits any of the following acts is guilty of a

4

public offense:

(1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.

. . . .

(5) Knowingly and without permission disrupts or causes the disruption of computer services or denies or causes the denial of computer services to an authorized user of a computer, computer system, or computer network.

As discussed in the Court's previous order, the facts alleged by Plaintiff do not support a claim under subsection (c)(1). The SAC's factual allegations do not establish that any of the Defendants "accessed" the computer in Plaintiff's machine. "Access" is defined as "to gain entry to, instruct, or communicate with the logical, arithmetical, or memory function resources of a computer, computer system, or computer network." Cal. Penal Code § 502(b)(1). Because the lock-out mechanism was apparently programmed into the machine at the time it was manufactured, Defendants did not have to "access" the machine's computer to cause the machine to shut down after 800 hours.

With respect to subsection (c)(5), Plaintiff fails to state a claim because he still does not allege that **Defendants refused to provide him the access code because he was behind in payments**, **resulting in his machine shutting down**. Plaintiff knew that he would need to obtain an access code to unlock the machine after approximately 800 hours of use. What he allegedly did not know was that Defendants might refuse him the code if he was behind in payments. If Defendants actually refused to give him the code because he was behind in payments, any resulting disruption in service would arguably be "without permission." In contrast, if Plaintiff's machine became locked after 800 hours of use and Plaintiff was given the code upon requesting it, any period of inoperation before the access code was obtained would not constitute an impermissible disruption of service.

In the SAC, Plaintiff alleges that in April 2009, he got behind in his payments and was advised for the first time that if he did not bring his account current, he would be denied further requests for a time code. (SAC ¶ 10.) Plaintiff further alleges that "[h]e was able to

bring his account current before significant time was lost.  However, during this time, his machine was shut down twice over the weekend, causing production to stop until Monday and causing delay in satisfying contracts." (Id.)  Plaintiff's allegations are vaguely worded and do not make it clear whether he was ever actually denied the code because he was behind in payments.  It seems that any disruption in operations was due to Plaintiff not seeking the code before the weekend, not because he was refused the code.  Indeed, the SAC explains, "If the warning goes off during a long weekend, the machine will shut down and the owner will be unable to get in touch with anyone to provide the unlock code.  This would result in no production for that entire weekend." (SAC ¶ 17.)  A weekend shut-down under these circumstances would be an inconvenience (that might be preventable with foresight and planning), but would not be the result of Defendants impermissibly withholding the code to compel payments.

In his opposition papers, Plaintiff implicitly concedes that Defendants never refused to give him the code, arguing, "[I]t is the entire racket that is being challenged – whether or not the code actually ever is withheld. . . . Every time a 144 lockout occurs, it is caused by this unlawful motivation intended to circumvent the California legal collections system." (Pl.'s Mem. of P. & A at 3.)  The Court is not persuaded by Plaintiff's argument.  Plaintiff knew that the machine would lock after 800 hours of operation, requiring an access code to unlock it. Unless Defendants refused to give Plaintiff the code for reasons not previously disclosed – i.e., to compel payments – any disruption in operations was not "without permission" and did not violate Cal. Penal Code § 502, subsection (c)(5).

The allegations of the SAC do not support a claim under Cal. Penal Code § 502. Therefore, Defendants' motion to dismiss is **GRANTED** as to this cause of action.

B.  Cal. Bus. & Prof. Code § 17200

In the Court's previous order, the Court granted Defendants' motion to dismiss with respect to Plaintiff's § 17200 claim because Plaintiff had failed to allege that he had suffered any damages as a result of the alleged unfair business practices.  The Court explained that

some time and effort, however minimal, would be required to obtain the access code after 800 hours of operation *whether the machine operator was behind in payments or not.* Accordingly, the Court explained, to establish injury due to Defendants' alleged unfair business practices, Plaintiff must allege that he made *special or additional efforts* to obtain the access code as the result of threats to deny Plaintiff the code because he was behind in payments.

Once again, Plaintiff alleges that he lost time and effort dealing with responses to the 144 lock out codes (SAC ¶ 37), but does not allege that he had to make special or additional efforts to obtain the code because Defendants denied or threatened to deny Plaintiff the code because he was not current on payments.   Plaintiff reasserts his position that his challenge is to the "very existence of the 144 lockout system." However, as discussed above, the Court rejects this theory.  Plaintiff's gripe is with Defendants' use of the lockout system *to collect payments that are owing*, a tactic that allegedly was not previously disclosed.  Plaintiff has not shown that he suffered any injury from Defendants' withholding of access codes to compel payments.  Therefore, he lacks standing to challenge such practices, Cal. Bus. & Prof. Code § 17204, and Plaintiff's § 17200 claim is dismissed for failure to state a claim.

## IV.  CONCLUSION

For the reasons discussed above, Defendants' motion to dismiss the SAC is **GRANTED**.  The Clerk shall enter judgment accordingly.  It appears to the Court that after three complaints and specific instructions by the Court, Plaintiff cannot allege in good faith that he ever asked for and was denied the access code.  If Plaintiff in fact requested the access code and a defendant refused to provide it, he may state that expressly in a motion for reconsideration, and the Court will allow the filing of a Third Amended Complaint.  The motion for reconsideration must state that "On or about ___, Plaintiff requested the access code from defendant ___, who refused to provide it."  Any motion for reconsideration must be filed by November 23, 2009.  Failure to file such a motion will result in the entry of a final

1  judgment dismissing the complaint.

2  **IT IS SO ORDERED.**

3

4  DATED:  November 12, 2009

5

6  Honorable Barry Ted Moskowitz
   United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

8